# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE MCINTYRE BUILDING COMPANY INC., | ) ) ) ) | |
| Debtor, | ) ) | CASE NO. 2:12-cv-555-ALB |
| MCINTYRE LAND COMPANY, INC., | ) ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| SERVISFIRST BANK, | ) ) | |
| Intervenor Plaintiff-Appellant | ) ) | |
| v. | ) ) | |
| BRANCH BANKING AND TRUST COMPANY, INC., MCINTYRE BUILDING COMPANY INC., AND INNES T. MCINTYRE, IV. | ) ) ) ) ) | |
| Defendants-Appellees. | ) ) | |
| v. | ) ) | |
| SUSAN SHIROCK DEPAOLA | ) ) | |
| Trustee-Defendant-Appellee | ) ) | |

## MEMORANDUM OPINION AND ORDER

This litigation is about whether a bank has a mortgage on undeveloped property or on a shopping center. It comes to the Court after the Bankruptcy Court entered Proposed Findings of Fact and Conclusions of Law to resolve an adversary proceeding between, on one side, Plaintiffs McIntyre Land Company and Servisfirst Bank and, on the other side, Defendants Branch Banking and Trust Company, Inc., and the Bankruptcy Estates of McIntyre Building Company Inc. and Innes T. McIntyre.[1] After extensive briefing and an evidentiary hearing, the Bankruptcy Court recommended that this Court: (1) deny Plaintiffs' claims, including its claims quiet title and for fraud and (2) declare that Branch Banking and Trust Company, Inc., has a valid mortgage lien on the shopping center and no mortgage lien on the undeveloped property. *See* Doc. 1-6.

Both sides disagree with aspects of the Bankruptcy Court's order. Plaintiffs argue that the Bankruptcy Court (1) did not have subject matter jurisdiction over the dispute (2) should have abstained from adjudicating the dispute and (3) was wrong on the merits. Defendants agree with the Bankruptcy Court's bottom-line conclusions on jurisdiction, abstention, and the merits. But they argue that this matter is a "core proceeding" such that the Bankruptcy Court should have entered a

---

[1] The case once included First American Title Insurance Company as an additional defendant, but it was dismissed by joint stipulation of the parties. *See* Doc. 32.

final order instead of proposed findings of fact and conclusions of law. *See* 28 U.S.C. § 157(b)(2)(B).

Having reviewed the record and applicable law de novo and with the benefit of oral argument, this Court agrees with the Bankruptcy Court's bottom-line conclusions. Accordingly, to the extent the litigation is a "noncore" proceeding or a "core" proceeding subject to de novo review, the Court adopts the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law as modified by this opinion. In the alternative, if the matter were a "core" proceeding, then it would properly be reviewed on appeal to this Court under 28 U.S.C. § 158, and the Court would affirm the Bankruptcy Court's decision. Either way, the Plaintiffs' objections to the Bankruptcy Court's decision are overruled, and the Bankruptcy Court's decision is adopted as modified by this opinion.

## Background

The Court adopts the Bankruptcy Court's factual findings to which no party objected. The most salient of those facts are summarized below.

Innes McIntyre ("Innes") was in the construction and real estate development business. Innes was the sole owner of McIntyre Building Co., Inc. ("Building"). Innes' *wife* owned McIntyre Land Co., Inc. ("Land"). Innes was the President of both companies.

Colonial Bank ("Colonial") loaned $3.1 million to Building, which was secured by the Prattville Square Shopping Center, which is owned by Land.[2]

ServisFirst Bank ("ServisFirst") loaned money to Land, and that loan was also secured by a mortgage on the same shopping center.

It made no business sense for a loan to Building to be secured by property owned by Land. Recognizing as much in 2006, Innes asked Colonial whether it would substitute as collateral a 165-acre parcel of unimproved land owned by Building for the Prattville Shopping Center owned by Land. Presumably, Innis made this request as President of both companies. A representative of Colonial wrote Innes the following letter:

> Dear Innes:
>
> This is to advise that Colonial Bank (Colonial) has agreed to release the Prattville Square Shopping Center as collateral on the referenced loan and replace it with 140 acres of land in Prattville. This is subject to a new appraisal being ordered to confirm that the proper loan to value on the property will be maintained. By signing this letter you agree to pay for the appraisal on the 140 acres.
>
> Sincerely,
>
> /s/ Bill R. Renfroe
>
> Vice President
>
> BY: _____
> Innes McIntyre       Date

---

[2] The loan was also secured by real property owned by Building, but that lien is not as issue here.

All parties agree, and the Bankruptcy Court found, that the letter proposed to substitute the 165 acres of undeveloped property at issue in this case, even though it erroneously referred to the real estate as 140 acres.

The parties meant to complete this "collateral swap" agreement. But the parties never completed the deal. The undeveloped land was appraised, but Innis never signed the letter as the President of either Building or Land. Colonial and Land never executed a release of the mortgage on the Prattville Square Shopping Center. Colonial never recorded a mortgage on the unimproved property owned by Building. Accordingly, public records continued to reflect a Colonial mortgage on Land's Prattville Square Shopping Center and no Colonial mortgage on Building's 165 acres.

In December 2008, Colonial and Building renewed the original $3.1 million loan in a document that states the loan remained secured by Land's Prattville Square Shopping Center.

In 2009, Colonial went broke and was taken over by the Federal Deposit Insurance Corporation.

Branch Banking and Trust Company ("BB&T") purchased Colonial's relevant assets from the FDIC and is the successor in interest to the Colonial loan.

## Procedural History

In 2010, Innes and Building both filed for bankruptcy. Land and Innes' wife remained solvent. [3]

When Building filed for bankruptcy, it listed BB&T as having a mortgage lien on the 165 acres of unimproved land.

Land filed an adversary proceeding in Building's bankruptcy, which asserted claims against Building, Innes, and BB&T. The complaint (which was later amended) alleged that BB&T (as Colonial) had promised that it would release Land's Prattville Shopping Center. The complaint asked the Bankruptcy Court to order the parties to complete the collateral swap agreement, that is, to order Building to execute a mortgage on the 165 acres that Building owned and to compel BB&T to execute a release of the mortgage on the shopping center that Land owned.

After filing a proposed amended complaint to add additional parties, drop Building as a defendant, and modify its theories of relief, Land moved to dismiss its own action.

---

[3] For the purposes of this litigation, the Court assumes without deciding that Land and Building are separate entities. But there has been litigation elsewhere about whether Innes' wife's ownership of Land was a sham such that those assets should be included in bankruptcy. Indeed, the problem in this case appears to arise entirely from Innes disregarding Land's and Building's corporate separateness in pledging the property of the former as collateral for a loan to the latter.

BB&T filed an answer and counterclaim in which it sought a declaration that it had a valid lien on Land's Shopping Center or, in the alternative, a valid lien on Building's165 acres. BB&T also opposed Land's motion to dismiss.

The Bankruptcy Court granted Land's motion to dismiss because it concluded that the dispute did not involve property of the bankruptcy estate. But the very next day the Bankruptcy Court issued an order stating that it may have made an error because it had overlooked BB&T's answer and counterclaim. BB&T also filed a motion for relief from judgment, arguing that the Bankruptcy Court had erred.

While the Bankruptcy Court was trying to determine whether it had erred in dismissing Land's adversary proceeding, Land filed a new complaint in state court that made essentially the same allegations it had made in its proposed amended complaint in the bankruptcy. The state-court complaint did not list Innes or Building in the caption as parties. The complaint did, however, include this allegation in paragraph 8:

> In 2006, Codefendants McIntyre Building Company and Innes McIntyre as well as [Land] entered into an agreement with BB&T. That agreement required BB&T to release its mortgage on Prattville Square Shopping Center and, in turn, McIntyre Building agreed to encumber a 165 acre parcel of property located in Prattville, Alabama with a mortgage loan with BB&T.

BB&T removed the state-court complaint to federal court, creating another adversary proceeding in the bankruptcy.

For its part, Land opposed the motion to reopen Land's previously dismissed adversary proceeding and argued that its state-court complaint in the new adversary proceeding should be remanded. The gist of Land's argument in both cases was that its claims did not affect Building's bankruptcy estate.

After holding hearings and reviewing extensive briefing, the Bankruptcy Court ultimately decided that it would reopen the dismissed case, keep the state-court case, and consolidate the two actions. The Bankruptcy Court explained that it had jurisdiction over the disputes and would need to resolve them to administer the bankruptcy estate:

> While the form of these proceedings is somewhat complex, the central question is whether the mortgage of BB&T encumbers land of McIntyre Land, as contended by BB&T, or whether the mortgage of BB&T encumbers land of McIntyre Building, as contended by McIntyre Land. . . . In bankruptcy parlance, McIntyre Land argues that BB&T holds a secured claim against property of the estate while BB&T argues that it does not. Therefore, the Court concludes that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(e)(1), and that these are core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B).

Doc. 7-17 at 7 (Memorandum Decision).

The litigation continued, and the Bankruptcy Court entered the Proposed Findings of Fact and Conclusions of Law on review here. In the Bankruptcy Court's proposed conclusions, it apparently changed its mind about whether the dispute was a core proceeding:

> [T]his proceeding is noncore. This conflict arises under contracts, promissory notes, and mortgages. The dispute could have arisen absent

a bankruptcy filing. On the other hand, a core proceeding can only arise in the context of a bankruptcy case. To be sure, the bankruptcy filing made by Building complicated things for Land, but the underlying dispute here is one involving state law rights under contract and property.

Recommendation at 14.

## Jurisdiction and Standard of Review

There are two potential grounds for this Court to review the Bankruptcy Court's order. Bankruptcy courts are Article I courts, and their authority is limited both by statute and Article III of the Constitution. In "core proceedings," the bankruptcy court may enter a final order, 28 U.S.C. § 157(b)(1), that is subject to appellate review by the district court, *see* 28 U.S.C. § 158, which applies the usual deferential standards of appellate review, s*ee* Fed. Rule Bkrtcy. Proc. 8013. In a noncore proceeding, the bankruptcy court submits proposed findings of fact and conclusions of law and "any final order or judgment shall be entered by the district judge . . . after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

Article III further complicates this area. Even though the bankruptcy statute contemplates that bankruptcy courts will enter final orders in all core proceedings, the Supreme Court has held that, for certain state-law core proceedings, a bankruptcy court lacks the constitutional authority to enter a final order. *See Stern v. Marshall*, 564 U.S. 462 (2011). Instead, if the parties do not consent to the bankruptcy court's

jurisdiction, the bankruptcy court must treat the core proceeding as if it were a noncore proceeding and enter proposed findings of facts and conclusions of law for de novo review by the district court. *See Executive Benefits Insurance Agency v. Arkison*, 573 U.S. 25 (2014).

The parties dispute whether the adversary proceeding at issue here is core or noncore. As explained below, the Court concludes that this matter is a core proceeding. But the Court's resolution of that dispute does not affect the Court's jurisdiction to review the order or the bottom-line result under the applicable standard of review. If the Bankruptcy Court's order were properly construed as a final order at the conclusion of a "core" proceeding—instead of the recommendation that is currently is—that order would properly be on appeal to this Court and this Court would have jurisdiction to review it. Although a deferential standard of review would apply if this matter were on appeal from a core proceeding, the Court finds that the standard of review is immaterial. Even applying the most rigorous and demanding standard—de novo review—the Court concludes that the Bankruptcy Court's proposed findings and conclusions are due to be adopted. For the same reason, the Court concludes that it is irrelevant whether the Bankruptcy Court may have had the constitutional authority under *Stern* to issue a final order in this case. Even if the Bankruptcy Court were correct under the statute or the Constitution to

issue proposed findings and conclusions, the Court would adopt those proposed findings and conclusions after de novo review as modified by this Opinion.

## Discussion

A business school professor should write a case study on this collateral swap to teach students about turn-of-the century business practices and the circa 2008 real estate boom and bust. The Bible tells us that "[t]he prudent see danger and take refuge, but the foolish keep going and pay the penalty." Proverbs 27:12. The latter is what we have here: a deal that everyone wanted done, but no one bothered to complete. Considering the cavalier way that Innes, Land, Building, and Colonial all approached securing the multi-million-dollar loan at issue in this case, it's no wonder three of the four went broke when the market dropped.

Land and ServisFirst object to the Bankruptcy Court's rulings on jurisdiction and the merits. Neither argument is persuasive.

## I.    Subject Matter Jurisdiction

There are three parts to Land's argument that the Bankruptcy Court lacked subject matter over this adversary proceeding. First, Land argues that the bankruptcy court improperly reopened the adversary proceeding that Land itself filed in Building's bankruptcy case. Second, Land argues that the Bankruptcy Court lacked jurisdiction over its state-court complaint because, invoking the well-pleaded complaint rule, there was no bankruptcy issue on the face of the complaint between

non-debtors Land and BB&T.  Third, Land argues that the bankruptcy court was required to abstain from adjudicating its state-court complaint under 28 U.S.C. § 1334(c)(2).

## A. The Bankruptcy Court properly reopened the first adversary proceeding.

Land argues that the Bankruptcy Court erroneously reopened and reconsidered its dismissal of the original lawsuit, which Land filed in the bankruptcy court. There is no real question that the Bankruptcy Court had jurisdiction over that adversary proceeding. It was filed in the Building bankruptcy and, at the very least, "could conceivably have [had] an effect on the estate being administered in bankruptcy" by "alter[ing] the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)" or otherwise "impacting upon the handling and administration of the bankrupt estate." *Lawrence v. Goldberg*, 573 F.3d 1265, 1270–71 (11th Cir. 2009).

The only real question is whether the Bankruptcy Court had the discretion to withdraw and correct its order granting Land's voluntary motion to dismiss its lawsuit.  The procedural history of the original action is short, but complicated.  The Bankruptcy Court summarized it as follows:

> Adversary Proceeding 10-3029, first came before the Court for a hearing on June 8, 2010. At that time, the Court made the parties aware of its concern that the alleged "collateral swap" may be a fraudulent conveyance . . . [or] a voidable preference within the meaning of 11 U.S.C. § 547.

Shortly after the June 8 hearing, and possibly in response to the Court's concerns, McIntyre Land filed an Amended Complaint (10-3029, Doc. 18), without first seeking leave to amend as required by Rule 15(a), Fed. R. Civ. P. and Rule 7015, Fed. R. Bankr. P. . . .

The Amended Complaint differs from the original complaint in that McIntyre Land has abandoned its "collateral swap" theory and elected to proceed on fraud and breach of contract theories, contending that the Bank has promised to release its lien on the Prattville Square Shopping Center, but purports to take no position that other property owned by McIntyre Building was to be mortgaged. To further complicate matters, McIntyre Land joined additional Defendants (i.e. Mississippi Valley Title Insurance Company, Pro Abstract Co., Inc., First American Title Insurance Company and Macon County Abstract and Title Company, Inc.). None of these new Defendants were named in the caption of the Amended Complaint nor were the now apparently superfluous Defendants (i.e. Innes McIntyre and McIntyre Building) dismissed, creating some confusion as to who were the true parties to Adversary Proceeding 10-3029, in light of the Amended Complaint.

In response to [a] Motion to Strike the Amended Complaint filed by BB&T, McIntyre Land did them one better and moved to dismiss its own complaint, without prejudice. Notwithstanding the fact that BB&T has previously moved to dismiss the original complaint (albeit with prejudice), BB&T then opposed the motion to dismiss, without prejudice, filed by McIntyre Land. As it then appeared to the Court that the Amended Complaint affected only the rights of nonbankrupt parties, the Court granted the motion to dismiss by McIntyre Land on October 21, 2010. (10-3029; Docs. 36, 37).

Unfortunately, the [Bankruptcy Judge] was not aware that BB&T had filed an Answer, Counterclaim and Crossclaim at the time he entered the October 21 order granting the motion to dismiss. (10-3029, Doc. 34). Within several hours of entry of the October 21 Order, the [Bankruptcy Judge] became aware of the Counterclaim and, by Order dated October 22, 2010, sua sponte, set a Status Conference with the intention of determining whether the October 21 order of dismissal should be vacated. After hearing from the parties at the November 19 hearing, the Court entered an order calling for briefs on its sua sponte motion to reconsider. (10-3029, Doc. 40).

Doc. 7-17 at 4-5.

The Bankruptcy Court ultimately decided to withdraw its order dismissing the adversary proceeding "as having been improvidently entered in light of the Counterclaim and Crossclaims which BB&T had timely filed, but were not considered by the Court." Doc. 7-17 at 8. The Bankruptcy Court rejected Land's argument that it did not have the authority to *sua sponte* reconsider its order:

> McIntyre Land argues that the Court's Order of Dismissal entered October 21, 2010 was dispositive and that it became final 14 days thereafter as no appeal was filed. If that is the case, McIntyre Land contends that Adversary Proceeding 10-3084 is dismissed, and that 10-3029 should be remanded to Montgomery County for trial on the State law questions raised. Admittedly the procedural history of this case is ragged and the Court bears a share of the blame, first for failing to consider the Counterclaim and Crossclaim at the time the Order of Dismissal was entered and second for failing to make clear in its Order of October 22, that it would reconsider, sua sponte, its October 21 Order. As the Court moved to reconsider sua sponte its October 21 Order, BB&T needed not nor could not file an appeal until the reconsideration was determined. Much of the discussion in the brief filed by McIntyre Land centers on Rule 60, Fed. R. Civ. P., contending that a Rule 60 motion is not a substitute for a timely appeal. While this statement is a correct statement of the law, it is not applicable here as the Court, acting sua sponte, timely took action to reconsider its October 21 Order.

Doc. 7-17 at 9.

Land raises two issues about the Bankruptcy Court's order. First, Land argues that the Bankruptcy Court was wrong as a matter of procedure because it did not have the discretion to reconsider its order under Rule 60 of the Federal Rules of Civil Procedure. Second, Land argues that the Bankruptcy Court was wrong as a matter of substance because its initial dismissal order was correct.

The Court rejects Land's arguments.

First, the Bankruptcy Court had discretion to reconsider its order. Land relies extensively on cases about the correction of clerical errors under Rule 60(a) of the Federal Rules of Civil Procedure, which imposes no time limit on a correction. But the Bankruptcy Court acted quickly and had discretion to reconsider its order under Rule 60(b). Rule 60(b)(1) provides that, within a reasonable time not more than a year, a court "may relieve a party or its legal representative from a final judgment, order" for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b). The Eleventh Circuit has held that the "broad language" of Rule 60(b)(1) includes "mistakes of fact as well as mistakes of law." *Nisson v. Lundy*, 975 F.2d 802, 806 (11th Cir.1992). "In the original version of the Rule, relief was permitted a party for 'his mistake'; the 1946 amendments changed to language to make clear that relief from judgment was available for any mistake, including the mistake of the court." *In re 310 Assocs.*, 346 F.3d 31, 34–35 (2d Cir. 2003) (citing rule comments). Procedurally, the Bankruptcy Court had discretion to reconsider its order and correct what it viewed as a mistake.[4]

---

[4] Most authority suggests that a trial court may corrects it errors under 60(b) *sua sponte*. *E.g. Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347 (9th Cir.1999); *Simer v. Rios*, 661 F.2d 655, 663 n. 18 (7th Cir.1981); *International Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir.1977). But, even if a motion were required, BB&T filed a timely motion.

Second, the Bankruptcy Court did not err on the merits when it reconsidered its order on Land's motion for voluntarily dismissal under Rule 41(a)(2). Because "the purpose of the rule is primarily to prevent voluntary dismissals which unfairly affect the other side," a trial court "considering a motion for dismissal without prejudice should bear in mind principally the interests of the defendant, for it is the defendant's position that the court should protect." *McCants v. Ford Motor Co.*, 781 F.2d 855, 856 (11th Cir. 1986)(internal quotations marks and citations committed). As the Bankruptcy Court explained, Land's position that its amended complaint[5] would not impact BB&T's lien against Building's undeveloped land or the administration of the bankruptcy estate was "disingenuous:"

> The only sensible way to consider all of the claims of all of the parties in these two adversary proceedings is in a single proceeding. Otherwise there is a possibility of inconsistent adjudications as well as the very real problem that a State Court would be making determinations that would directly affect property of the estate of McIntyre Building.

Doc. 7-17 at 7. The Bankruptcy Court reasonably concluded that BB&T's interest in adjudicating the priority of its lien against the bankruptcy estate, and the broader societal interest of address all related claims in the same bankruptcy, meant that

---

[5] Because Land was never granted leave to file an amended complaint as required under Rule 15(a) of the Rules of Civil Procedure, it is not clear that the amended complaint was the operative pleading when the Bankruptcy Court reconsidered its order on Land's motion to dismiss. There is no debate that the original complaint affected the bankruptcy estate as it was filed against Building and put the collateral swap front and center.

Land's voluntary motion to dismiss should be denied. Accordingly, the Bankruptcy Court had jurisdiction over the original adversary proceeding filed by Land.

**B. The Bankruptcy Court also had jurisdiction over Land's second state-court complaint and was not required to abstain.**

The Bankruptcy Court also had jurisdiction over Land's second state-court complaint and was not required to abstain.[6] These issues ultimately come down to the whether this adversary proceeding was about "core" or "noncore" issues.[7] Because the Court concludes the issues in this case were "core," it will not fault the Bankruptcy Court for maintaining jurisdiction and declining to abstain.

There are four basic types of litigation that bankruptcy courts have jurisdiction to resolve: (1) cases "under" title 11; (2) proceedings "arising under" title 11; (3) proceedings "arising in" a case under title 11; and (4) proceedings "related to" a case under title 11. *See* 28 U.S.C. § 157. Cases "under title 11" and proceedings "arising

---

[6] The Court questions whether the Bankruptcy Court's jurisdiction over the second state-court lawsuit even matters if the Bankruptcy Court properly reopened Land's first lawsuit. Nothing about the outcome of this federal case would have changed had the Bankruptcy Court remanded Land's successive state-court lawsuit. Moreover, as of this writing, the Bankruptcy Court has decided all the relevant issues as between the parties in ruling on the first adversary proceeding, so there would be nothing left for the parties to litigate in state court even if this Court were to remand the state-court lawsuit. Nonetheless, the Court will assume for the sake of argument that the Bankruptcy Court's jurisdiction over the removed state-law complaint matters.

[7] The parties make waiver arguments. BB&T argues that Land waived this core/noncore issue by failing to appeal the Bankruptcy Court's initial order. Land argues that BB&T waived the issue by failing to file a timely objection to the Bankruptcy Court's order issuing proposed findings and fact and conclusions of law. Considering the procedural irregularity of the Bankruptcy Court's rulings on this issue—a dismissal followed by a sua sponte reopening followed by an apparent sua sponte reversal in its final opinion—the Court does not fault the parties for litigating this issue as they did.

under title 11" are cases where the bankruptcy code itself creates a cause of action. *See Cont'l Nat'l Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1345 (11th Cir.1 999). Proceedings "arising in a case under title 11" are "core proceedings," which include "matters concerning the administration of the estate . . . allowance or disallowance of claims against the estate . . . [and] determinations of the validity, extent, or priority of liens" against the estate's property. 28 U.S.C. § 157(b)(2). "Related to" jurisdiction is a catchall where "the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy" by "alter[ing] the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Lawrence v. Goldberg*, 573 F.3d 1265, 1270–71 (11th Cir. 2009).

A bankruptcy court must abstain from lawsuits that are removed to federal court under the bankruptcy court's "related to" jurisdiction if certain conditions are met. *See Christo v. Padgett*, 223 F.3d 1324, 1331 (11th Cir. 2000). Abstention is mandatory if there is a (1) "timely motion;" (2) the proceeding is based on a state law claim or cause of action; (3) the proceeding is not a "core" proceeding, (4) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (5) an action "is commenced" in a state forum of appropriate

jurisdiction; and (6) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction. 28 U.S.C. § 1334(c).

The parties appear to agree that Land timely moved for abstention, the proceeding was based on state law, there is no non-bankruptcy basis for federal jurisdiction, the action was commenced in state court, and the state court could have timely adjudicated it. The only dispute is whether the adversary proceeding was a "core" proceeding. If Land's state-court complaint raised core issues, then there was no requirement that the bankruptcy court abstain. If it raised only noncore issues, then there was.

As with all statutory interpretation, the right place to start in answering the core/noncore question is the text of the statute. *See CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1227 (11th Cir. 2001)("The language of our laws is the law."). The statute states that "[c]ore proceedings include, but are not limited to— . . . allowance or disallowance of claims against the estate or exemptions from property of the estate . . . [and] determinations of the validity, extent, or priority of liens" on the debtor's property. 28 U.S. Code § 157(b)(2)(B)&(K).

Under that statute, this litigation raised core issues. When Building declared bankruptcy, it listed BB&T as a secured creditor with a mortgage lien on the undeveloped property as an asset of the estate. BB&T disputed that it had a mortgage lien on the undeveloped property. Land filed suit for a declaration that

BB&T did not have lien on its property *because it had agreed to swap that lien for a mortgage lien on Building's property*. The lawsuit turned on a swap agreement that had three parties: Building (the debtor in bankruptcy), Land, and BB&T. And paragraph eight of the complaint in Land's state-court lawsuit recognized that Building was a proper defendant and necessary party. Normally, a prospective creditor like BB&T argues that it *does* have a mortgage lien and the bankruptcy estate argues that it does not; here, BB&T argues that it *does not* have a mortgage and the bankruptcy estate initially took the position that it did.[8] But that unusual turnabout does not change what the litigation was about. The litigation was about the "allowance or disallowance" of BB&T's claim against Building's estate and the "validity" and "extent" of BB&T's lien on the undeveloped property that Building owned.

The Eleventh Circuit has also provided a helpful shortcut for identifying when litigation might be core or noncore. A core issue usually "stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *In re Fisher Island Invs., Inc.*, 778 F.3d 1172, 1190 (11th Cir. 2015). A bankruptcy court's primary function is to exercise jurisdiction over the debtor's property and make an equitable distribution of that property to creditors. Here, as part of the claims allowance process, the Bankruptcy Court necessarily had to resolve whether BB&T

---

[8] When the bankruptcy trustee took over the debtor, she supported BB&T.

had a secured claim against Building's undeveloped property as listed in Building's bankruptcy schedules. In fact, Building's 160 acres has been sold during the bankruptcy, and the trustee is waiting for this litigation to conclude before applying the proceeds either to BB&T's mortgage (if the collateral swap is enforceable) or to the claims of unsecured creditors (if it is not). Moreover, the trustee argued that her "strong arm powers" under 11 U.S.C. § 544(a)(3) prevented Land from requiring specific performance of the collateral swap agreement, which is an issue that could arise only in bankruptcy. *See* Doc. 7-34 (Trustee's post-trial brief). These insights were the reason the Bankruptcy Court originally held this dispute to be "core."

For its part, the Bankruptcy Court's second, and cursory, opinion on this issue was contrary to applicable law. The Bankruptcy Court erroneously stated that the matter was noncore because the "conflict arises under contracts, promissory notes, and mortgages." Doc. 1-6 at 14. It said that the mere fact that "the underlying dispute here is one involving state law rights under contract and property" made it a noncore proceeding. Doc. 1-6 at 14. But the statute expressly states that a "determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). Moreover, the Eleventh Circuit has warned lower courts to be "mindful that the dependence of the merits of an action on state law . . . does not, in and of itself, mean that the action is non-core." *In re Toledo*, 170 F.3d 1340, 1349 (11th Cir. 1999). In other words, the

statute and Eleventh Circuit cases expressly contemplate that some state-law disputes will be "core." This dispute is one of them, as the Bankruptcy Court properly recognized in its initial order on this issue.

Perhaps recognizing the persuasiveness of the above logic, Land argues that it pleaded around the Bankruptcy Court's jurisdiction by limiting the relief it sought in its state-court complaint to fraud damages and a judgment that BB&T's lien against Land's shopping center was invalid. That relief, Land argues, has nothing to do with the property of Building, BB&T's claim against the bankruptcy estate, or administering the bankruptcy estate. But Land's argument ignores at least three points.

First, Land's argument is deeply impracticable. These matters were going to be litigated in a bankruptcy court one way or another. There was no way for the Bankruptcy Court to resolve the Building bankruptcy without deciding whether BB&T had a lien on the 160 acres. And, to do that, it had to address the collateral swap agreement. Given that the Bankruptcy Court had to adjudicate these claim-and-lien issues as core proceedings, it would make no sense to abstain from Land's state-court complaint on the same issues. *See In re Hearthside Baking Co., Inc.*, 391 B.R. 807, 817-818 (Bkrtcy.N.D.Ill. 2008) ("It would be terribly inefficient to have this Court decide core matters filed under title 11 in the direct adversary proceeding and to have a state court adjudicate a case based on the same facts and similar causes

of action."); *In re EZ Pay Services, Inc.*, 390 B.R. 421, 430-431 (Bkrtcy. M.D. Fla. 2007) (denying motion to abstain where action is inextricably intertwined with a core issue); *In re CRD Sales and Leasing, Inc.*, 231 B.R. 214 (Bankr.D.Vt.1999) (same).

Second, no matter Land's requested relief, Building is a party to the alleged collateral swap agreement. Building's rights under the collateral swap are property of the estate and its liabilities under the agreement are claims against the estate. As a party to the agreement, Building was an indispensable party to Land's lawsuit. *E.g. Caribbean Telcoms., Ltd. v. Guy. Tel. & Tel. Co.*, 594 F.Supp.2d 522, 532 (D.N.J. 2009) ("a contracting party is the paradigm of an indispensable party").

Third, Land tipped its hand by referring to Building as a defendant in paragraph eight of the complaint and stating that the collateral swap encumbered Building's "165 acre parcel of property located in Prattville, Alabama with a mortgage loan with BB&T." "Bankruptcy courts have exclusive jurisdiction over a debtor's property, wherever located, and over the estate." *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004). Even if the well-pleaded complaint rule applied in this situation, the Bankruptcy Court was not required to ignore paragraph eight's allegations about the debtor and its property in determining whether to exercise jurisdiction or abstain.

## II.    Merits

The merits are substantially more straightforward than jurisdiction.  The Bankruptcy Court held that Land's claim for fraud failed for lack of an intentional misrepresentation and that Land's claim for quiet-title/breach-of-contract failed because (1) 12 U.S.C. § 1823(e) prohibits enforcing an unexecuted agreement against a purchaser of FDIC assets like BB&T and (2) the collateral swap is also not enforceable for lack of consideration.  Land did not object to the Bankruptcy Court's ruling on its fraud allegations. *See* Doc. 1-8 (Land's objections).  Instead, Land argues that the Bankruptcy Court was wrong to reject its quiet-title/breach-of-contract claim because "[Section 1823(e) does] not apply to its claims and [] the agreement to release the Prattville Square Shopping Center is enforceable against BB&T."  Doc. 1-8 at 5.

After de novo review of the evidentiary hearing that the Bankruptcy Court held on these claims, the Court adopts the Bankruptcy Court's un-objected-to rulings on Land's allegations of fraud and the Bankruptcy Court's ruling on Section 1823(e). Section 1823(e) was enacted by Congress to codify the Supreme Court's decision in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942).  It states that unwritten or unexecuted agreements are not enforceable against the FDIC or its successors in interest:

> No agreement which tends to diminish or defeat the interest of the
> Corporation in any asset acquired by it under this section or section

1821 of this title, either as security for a loan or by a purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

   (A) is in writing

   (B) *was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset of the deposition institution,*

   (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

   (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(emphasis added). The Eleventh Circuit has explained that "executed" under Section 1823(e) "must mean that the [party] has 'signed' the agreement[; t]hat a piece of paper merely recites obligations of more than one party is insufficient." *Twin Const., Inc. v. Boca Raton, Inc.*, 925 F.2d 378, 383 (11th Cir. 1991). No representative of Land signed anything that would meet the dictates of Section 1823(e)—a release, a collateral swap, or Colonial's letter about the collateral swap. A non-signatory cannot enforce a contractual right that is affected by 1823(e). *Id.* Accordingly, the Bankruptcy Court was correct to reject Land's quiet title and breach of contract claims.

Because the Court agrees with the Bankruptcy Court's ruling under Section 1823(e), the Court expresses no opinion on whether the collateral swap is also unenforceable because it lacked consideration.

## Conclusion

The Bankruptcy Court's Proposed Findings and Fact and Conclusions of Law (Doc. 1-6) are **ADOPTED** as modified by this Memorandum Opinion and Order. In the alternative, the Bankruptcy Court is **AFFIRMED**.

A final judgment will issue separately.

**DONE** and **ORDERED** this 8th day of October 2019.

_____/s/ Andrew L. Brasher_____
ANDREW L. BRASHER
UNITED STATES DISTRICT JUDGE